## C. W. McDonald, *alias* Jack McDonald v. The State.

No. 20672. Delivered January 10, 1940.
Rehearing Denied February 21, 1940.
Leave to File Second Motion for Rehearing Denied February 28, 1940.

The opinion states the case.

*Baker & Baker,* of Coleman, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is bigamy. The punishment assessed is confinement in the state penitentiary for a term of five years.

The State's testimony, briefly stated, shows that appellant was legally married to Miss Eula Mae Crisp in Menard County, Texas, in the year 1937. That thereafter on the 19th day of November, 1938, he obtained a marriage license from the county clerk of Coleman County and married Miss Roberta Belle Young. Both of said marriage licenses were duly returned and recorded by the clerks of the respective counties from which they were issued. The persons who performed the marriage ceremonies testified and each positively identified appellant as the man whom they married to the respective young ladies. Appellant testified in his own behalf. He admitted

having married each of the ladies, but set up as a defensive theory that after his first marriage he and another person started on their way to Detroit; that on their way they stopped at a restaurant in some small town in Oklahoma for dinner and while there he (appellant) met a man named Reed who claimed to be an attorney. That he engaged Reed to obtain a divorce for him which Reed agreed to do. That he and his companion then proceeded on their way to Detroit. He testified that after his return to Texas he received from Reed a document which he did not understand, accompanied by a letter requesting him to sign said document, have it witnessed, and then return it. That upon receipt of the same by Reed, the divorce would be obtained. He further testified that it was his belief that upon his compliance with this requirement, he was legally divorced from Eula Mae, and so on the following November he felt free to marry again. He also testified that subsequent to his second marriage he learned that the court in Oklahoma had declined to grant the divorce, and that from that day on he ceased to live with Roberta Belle Young as his wife.

By bill of exception number six, appellant complains of the action of the trial court in permitting the district attorney, on cross-examination of appellant, to make inquiry as to a certain letter which he had written to the father of Roberta Belle Young, in which he requested the father to have the marriage annulled; that he stated in said letter that he intended to go out west until the matter was straightened out, and then they could "re-do things." He also stated in said letter that he had consulted a lawyer who had advised him that this was the best way out of it. Appellant objected to the introduction in evidence of the statements contained in said letter on the ground that the same were prejudicial, irrelevant, immaterial and did not prove or tend to prove subsequent actions and statements. Even if it should be admitted that the testimony complained of did not tend to prove any element of the offense, we fail to see how it was hurtful to him. The letter showed that as soon as he learned that he had not obtained a divorce in Oklahoma, he sought to have the marriage with Roberta Belle Young annulled. It tended to show that he entered into the second marriage with the honest and sincere belief that he had a legal right to do so. That upon receipt of information to the contrary, he immediately did what he could to correct the error. In short the letter brought out facts which, if the jury had believed them, might have been a potent factor in exonerating him from the charge for which he was on trial. It appears to us that the facts disclosed by the letter tended

more to aid and strengthen his defensive theory than to hurt him.

Bill of exception number two complains of the court's failure to instruct the jury that Roberta Belle Young was an accomplice and that he could not be convicted upon her testimony unless it was corroborated. The State did not rely upon the testimony of Roberta Belle Young. There was ample testimony from other sources which sustained the State's case. Appellant admitted every fact necessary to support the charge in the indictment, but he sought to exculpate himself by his defensive theory. Moreover, the rule is well established in this State that when a woman with whom a bigamous marriage has been contracted testifies for the State and no proof is offered that she knew that the accused was already married at the time of the bigamous marriage, she is not an accomplice. See Bryan v. State, 63 Tex. Crim. Rep., 200 (206). The case of Burgess v. State, 88 Tex. Crim. Rep., 146, 225 S. W. 182 (184) cited by appellant as sustaining his contention does not do so. In that case Mrs. Evans, with whom the bigamous marriage was entered into, knew he was married and had a living wife *at the time she married him,* which is not the case here.

Appellant timely objected to the following charge of the court: "If from the evidence in this case you believe that the defendant C. W. McDonald was unlawfully married to Roberta Belle Young on or about the date alleged, and if you should further believe that at such time he had a lawful living wife, * * but you further believe that at the time of such latter marriage this defendant honestly believed that he had been divorced from his wife, you will find the defendant not guilty."

He bases his objection on the use of the word "honestly" as contained in the charge. He contends that the use of the word "honestly" placed a greater burden upon him than he was required by law to carry. His belief as to his status at the time of his marriage to Roberta Belle Young would necessarily have to be based upon reasonable grounds before he would be excused by the law for this offense. If appellant acted upon a state of facts which would not justify a person of ordinary intelligence in honestly arriving at a conclusion of his status, he would not, in the eyes of the law, be excusable. Webster defines the word "reasonable" to mean "just" and "honest." If his belief was not based on *reasonable* grounds, it might not be an *honest* belief inasmuch as he would have no reason to believe it at all. In support of what we have said here

we refer to the case of Williams v. State, 67 Tex. Crim. Rep., 287 (302), 148 S. W., 763.

By bill of exception number four, appellant complains of the action of the trial court in permitting the district attorney, over appellant's strenuous objections, to inquire of Roberta Belle Young about whether she or her supposed husband, the appellant, received a certain letter, to which the witness answered: "Yes, from his wife." Appellant objected thereto on the ground that it was a privileged communication. This bill is qualified by the court who states in the qualification that the letter was not offered in evidence. Consequently the communication between husband and wife was not offered in evidence. It is true that the witness had theretofore testified that appellant told her that he had received a letter from his wife in which she stated that she could "stick them." This testimony went before the jury without objection, but even if appellant had objected thereto, it would probably have been of no avail to him because it was a statement made by him and he was bound by it.

The introduction of the testimony complained of in bill of exception number five was relevant on the issue of whether appellant's belief was well founded that he could obtain a divorce in the State of Oklahoma over night. The cross-examination of appellant by the district attorney tended to show that he had some general knowledge of the law relative to divorce proceedings in Texas, and in the absence of any showing to the contrary, the presumption would obtain that the law of Oklahoma is like, or similar to, the law of this State in such matters. It appears from his testimony that he had had two divorce proceedings in Texas. The record is silent as to why he believed that he could obtain a divorce in the State of Oklahoma without either himself or the wife from whom he sought to obtain the divorce, living or ever having lived in said state. This testimony was admissible on the issue as to whether he had just grounds to believe, at the time that he married Roberta Belle Young, that he was divorced from his then living wife.

All of the bills of exceptions complaining of the argument of the prosecuting attorneys, in our opinion fail to reflect reversible error. Some of the bills are qualified by the court and as thus qualified fail to show error. Others show that the argument complained of was a just and reasonable deduction from the evidence.

All other matters complained of have been carefully examined by us and are deemed to be without merit.

No error of a reversible nature appearing in the record, the judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Crimnial Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again offers the contention that the wife of the second marriage was an accomplice, and therefore the court should have charged such, and also charged that her testimony should of necessity have been corroborated, etc.

The reason for the necessity of such charge, so appellant says, was because after learning of her bigamous marriage this wife continued to live with appellant for a short time. It might have been true that this bigamous wife was an accomplice to the offense of their unlawful living together after she had found out that he was not lawfully married to appellant, but the testimony shows that at the time the marriage occurred she thought that appellant was a single person, and, under the law, entitled to enter into the contract of marriage. She was not an accomplice witness to the bigamous marriage. Her testimony shows that she had been informed by appellant that he was a single man; that he had gotten his divorce, and was capable of legally entering into the marriage contract. It also seems that he continued to thus deceive his bigamous wife after she had questioned him about having a legal wife then living.

We see no reason for charging the jury relative to this witness being an accomplice. The offense of bigamy is complete when bigamous marriage occurs; regardless of subsequent cohabitation. Weir v. State, 115 Texas Crim. Rep. 491, 26 S. W. (2d) 271.

Appellant's defense was that he believed that he had been divorced from his first wife, and that he was entitled to an acquittal on the basis of a mistake of fact. He bases this defense on the following occurrence: He was in some unnamed town in Oklahoma sometime in 1938, while on his way to Detroit; he was in a drug store alone, and he asked the drug store man if he could direct him to a reliable attorney, and the drug store man said there is one right here, pointing to a man at a nearby table, and appellant then related his troubles

to this man, whose name was Reed. This lawyer lived at Ardmore, Oklahoma. Appellant paid this man $10 and went on his way. Appellant produced a letter at the trial purportedly from this man Reed; the envelope, however, he stated had been destroyed, the letter reading as follows:

"Ardmore, Oklahoma
"Nov. 5, 1938.

"Dear Mr. McDonald,

"In regard to the inclosed form, Sign it your self and have one other to sign it also, As this is required on all out of State work.

I wish to Also call your attention to the Bal-, on which you Owe, The Same being $10,

I can of corse useit as son as I can get it,

Do as I have Instructed you and I will stand betwene you and all other trouble.

"Attorney At Law, L. J. Reed."

It also appears from the record that appellant had had previous experiences in matters of divorce, and the jury did not see fit to believe his defense of a mistake of fact when he contracted his marriage with this fourteen year old girl.

We see no reason for enlarging on what we have already said in the original opinion relative to the court's charge on a mistake of fact as provided for in Article 41, Vernon's Ann. P. C. We think the charge given was probably more liberal than contemplated by the above statute. See Adams v. State, 7 S. W. (2d) 528.

We adhere to the views expressed in our original opinion herein.

The motion is overruled.

### ON SECOND MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant requests leave to file second motion for rehearing, asserting the court was in error in the original opinion and also in the opinion on rehearing in not reversing the judgment on appellant's contention that the trial court should have instructed the jury that Roberta Belle Young was an accomplice witness.

Apparently appellant proceeds on the theory that it is reversible error in all cases where a party is an accomplice witness for the trial court to omit an instruction on the subject.

We think this court is committed to the contrary view. In addition to the authorities cited upon that point in our original opinion we call attention to Bogan v. State, 114 Tex. Cr. R. 468, 22 S. W. (2d) 944; Haines v. State, 134 Tex. Cr. R. 524, 116 S. W. (2d) 399; Wilkerson v. State, 93 Tex. Cr. R. 50, 245 S. W. 430; Fisher v. State, 81 Tex. Cr. R. 568, 197 S. W. 189. Under the facts of the present case we are of opinion that no reversible error could be held to have occurred by omitting an instruction on accomplice testimony as it referred to the witness in question. The present writer rests the disposition of the point under consideration upon the proposition last above stated, hence expressed no opinion as to whether the evidence may have raised an issue as to the status of the witness.

Request for leave to file second motion for rehearing is denied.