Raymond Joseph ROY, Appellant,

v.

The STATE of Texas.

No. 1718–01.

Court of Criminal Appeals of Texas.

Nov. 6, 2002.

Richard S. Hoffman, Brownsville, for Appellant.

David W. Hartmann, Asst. Dist. Atty., Brownsville, Matthew Paul, State's Atty., Austin, for State.

### *OPINION*

The opinion was delivered PER CURIAM.

Appellant was convicted of possession of cocaine and the Court of Appeals affirmed.[1] We granted appellant's petition for discretionary review to address whether the court of appeals erred in holding that the warrantless search and seizure of appellant was reasonable. After reviewing the parties' briefs and the relevant portions of the record, and after hearing argument on the case, we conclude that our decision to grant the petition was improvident. Accordingly, we dismiss appellant's petition for discretionary review.[2]

HOLCOMB, J., filed a dissenting opinion in which PRICE, J., joined.

MEYERS, J., dissented.

### OPINION

HOLCOMB, J., filed a dissenting opinion, in which PRICE, J., joined.

I respectfully dissent to the majority's decision to dismiss appellant's petition for discretionary review as improvidently granted. Although the Thirteenth Court of Appeals reached the correct result in this cocaine possession case, its Fourth

---

**45.** *See* Tex. Bus. & Com. Code § 17.47(a).

**1.** *Roy v. State,* 55 S.W.3d 153 (Tex.App.-Corpus Christi 2001).

**2.** *See* Tex.R.App. P. 69.3.

Amendment analysis is questionable, at best. I believe we should write to explain the better way to analyze a case of this sort. Since the majority will not do so, I will.

I

A Cameron County grand jury indicted appellant, Raymond Joseph Roy, for felony possession of 400 or more grams of cocaine with intent to deliver. See Tex. Health & Safety Code § 481.112(f). Appellant filed a motion to suppress the cocaine on the ground it was obtained "without warrant, probable cause or other lawful authority," in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. The trial court held an evidentiary hearing to consider appellant's motion. The evidence presented at the hearing consisted of the testimony of two witnesses, along with two exhibits.[1] That evidence, viewed in the light most favorable to the trial court's later ruling,[2] established the following:

On August 2, 1999, an informant[3] notified the Cameron County Drug Enforcement Task Force that early the next morning, a thin, young, Anglo male named Raymond Julian Roy, Jr., would attempt to smuggle a kilogram of cocaine onto a flight from Harlingen to Connecticut. In response to that tip, Task Force officials dispatched two plainclothes drug enforcement agents to the Harlingen airport for the purpose of surveillance. On August 3,

1999, at about 6:45 a.m., appellant—a thin, young, Anglo male wearing an oversized T-shirt and oversized pants—walked into the sparsely populated airport terminal and over to one of the plainclothes agents, Juan R. Mijares. Appellant asked Mijares for directions to the ticket counter, and Mijares gave him directions. Appellant then walked to the ticket counter and got in line. Mijares walked to the ticket counter, too, stopped a few feet from appellant, placed his law enforcement identification around his neck, and waited quietly. Appellant saw Mijares and "started getting very nervous." After appellant purchased his ticket, he walked toward an escalator to the boarding area. As appellant walked, Mijares approached him, walked alongside him toward the escalator, and introduced himself as a law enforcement agent. The other plainclothes agent walked several feet behind. Mijares asked appellant whether he "could take a moment of [appellant's] time," and appellant replied in the affirmative. Mijares then asked appellant for his name and identification. Appellant stopped at the foot of the escalator, and though "he was shaking quite a bit," he produced a Connecticut driver's license that identified him as "Horacio Fernandez." Appellant also complained that "he was going to miss his plane." Mijares then contacted the Raymondville Police Department by cellular telephone and asked for a background check on the name provided.[4] Appellant

---

1. The two witnesses were prosecution witness Juan R. Mijares, an agent of the Cameron County Drug Enforcement Task Force, and defense witness Kim L. Figeroa, an employee of Southwest Airlines. The two exhibits were photographs, one showing appellant with a kilogram of cocaine taped to his abdomen, the other showing his false Connecticut driver's license.

2. This is the applicable standard of review. See our discussion, infra.

3. The record evidence did not establish whether the informant was anonymous.

4. Mijares testified in part as follows:

Q: Did he indicate to you at any time on the way to the escalator that he was in a hurry?
A: Yes, he said he was going to miss his plane.
Q: And you detained him, I mean, even though he was going to miss his plane?

became visibly upset at this and "started getting very fidgety." At this point, the second plainclothes agent moved closer to Mijares and appellant. Mijares then asked appellant whether he minded stepping away from the escalator, and appellant walked to a nearby seating area. While they waited at the seating area for the background check, Mijares noticed that appellant was "fidgeting with something" in his right front pocket. Mijares asked appellant whether he had any weapons on his person, and appellant replied, "No." Mijares then asked appellant what was in his right front pocket, but appellant did not answer. Mijares then asked appellant whether he minded if Mijares patted down his right front pocket, but again appellant did not answer. Mijares then approached appellant to pat down the pocket, but before he could do so, appellant "tried to turn away and get away." As appellant turned, his loose clothing became taut, and Mijares saw a flat, rectangular bundle under his clothing at waist level. The bundle was approximately two inches by three inches by six inches in size. Mijares patted down appellant's pocket, discovered a pair of sunglasses, and then asked appellant what the bundle was. Appellant replied by saying "What bundle?" or words to that effect. Mijares then handcuffed appellant and escorted him to the airport security office, where Mijares removed the bundle from appellant's waist. After the bundle was removed, appellant admitted that it contained a "kilo" of cocaine. Mijares then formally arrested appellant.

At the conclusion of the presentation of the evidence at the suppression hearing, appellant argued to the trial court that the cocaine should be suppressed as the fruit of an unlawful seizure and subsequent unlawful search. The trial court denied appellant's motion to suppress without explanation. Appellant then pled guilty to the offense charged and was sentenced to imprisonment for fifteen years.

On direct appeal, appellant argued that the trial court erred in denying his motion to suppress because the cocaine was the fruit of an unlawful seizure. More particularly, appellant contended that he was unlawfully detained (i.e., "seized") at the moment Mijares telephoned the Raymondville Police Department for a background check on the name on the Connecticut driver's license. "By taking Appellant's identification," appellant argued, "Officer Mijares effectively detained [him] by maintaining control of an important possession, and keeping [him] from boarding his flight." Appellant argued in the alternative that he was unlawfully detained when Mijares asked him to step away from the escalator. Appellant also argued that the cocaine should be suppressed as the fruit of an unlawful search. "The State failed," appellant argued, "to sustain its burden of demonstrating either reasonable suspicion or probable cause to search appellant for weapons."

The Thirteenth Court of Appeals rejected all of appellant's arguments and affirmed the trial court's judgment.[5] *Roy v. State*, 55 S.W.3d 153 (Tex.App.-Corpus Christi 2001). The court of appeals rea-

---

A: I asked him for his identification. I told him I would expedite it as soon as I could. *If I saw I was going to detain him more than that, I would let him go.*

**5.** Strangely, the Thirteenth Court's opinion failed to mention certain evidence that I consider essential to a proper Fourth Amendment analysis. For example, the Thirteenth Court failed to mention the evidence that the Cameron County Drug Enforcement Task Force received a tip and that the tip was largely corroborated by Agent Mijares before he arrested appellant.

soned that appellant was seized, for the purposes of the Fourth Amendment, only at the point he was handcuffed, and that the cocaine was the fruit of a lawful pat-down search for weapons. *Id.* at 156–157.

We granted appellant's petition for discretionary review to determine whether the Thirteenth Court erred in affirming the trial court's denial of appellant's motion to suppress. *See* Tex.R.App. Proc. 66.3(c).

## II

At a hearing on a motion to suppress, the trial court is the sole judge of the weight and credibility of the evidence. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990). An appellate court reviewing a trial court's ruling on a motion to suppress must view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling, and must sustain the trial court's ruling if it is reasonably supported by the record evidence and is correct under any theory of law applicable to the case. *State v. Ross,* 32 S.W.3d 853, 855–856 (Tex.Crim. App.2000).

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. 4. This guarantee was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Wolf v. Colorado,* 338 U.S. 25, 27–28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Evidence obtained in violation of the Fourth Amendment is generally barred from use in state criminal prosecutions. *Mapp v. Ohio,* 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *See also* Tex.Code Crim. Proc. art. 38.23.

A person is "seized" within the meaning of the Fourth Amendment if a state official forcibly restrains the person, or makes a "show of authority," under which a reasonable person would not feel free to leave, and the person submits to that show of authority. *California v. Hodari D.,* 499 U.S. 621, 626–627, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A state official may detain a person briefly for investigation without a warrant if the official can point to specific and articulable facts, together with reasonable inferences from those facts, that reasonably suggest the person detained is presently involved in criminal activity. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Information from an informant that exhibits sufficient indicia of reliability may provide the reasonable suspicion necessary to justify an investigatory detention. *Alabama v. White,* 496 U.S. 325, 326–327, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). A state official who detains a person briefly for investigation may conduct a limited pat-down search of that person if the official has a reasonable belief that the person detained poses a threat to the official's safety or the safety of others. *Terry v. Ohio,* 392 U.S. at 27–28, 88 S.Ct. 1868.

A state official may make a full custodial arrest of a person without a warrant if the official has probable cause to believe the person has committed a felony offense. *United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). A state official has probable cause to arrest if he has knowledge of facts and circumstances, grounded in reasonably trustworthy information, sufficient to warrant a belief by a prudent person that an offense has been or is being committed. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). If a state official has probable cause to arrest and then arrests a person, he may conduct a warrantless search of the person after, or immediately before, the formal arrest. *Rawlings v.*

*Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

I am not as sanguine as the Thirteenth Court that appellant was seized only at the point he was actually handcuffed and that the cocaine in question was merely the fruit of a lawful pat-down search for weapons. Nevertheless, my own analysis persuades me that the court of appeals did not err in affirming the trial court's denial of appellant's motion to suppress.

Assuming, without deciding, that Mijares "seized" appellant at the moment he telephoned in a request for a background check, the trial court could have reasonably concluded, on this record, that Mijares had reasonable suspicion to detain appellant briefly for purposes of investigation. According to the record evidence, at the moment Mijares telephoned in his request for a background check, he knew (1) that law enforcement officials had received a tip that on that morning, a thin, young, Anglo male would attempt to smuggle a kilogram of cocaine onto a flight from Harlingen to Connecticut, (2) that appellant fit the general description of the person described in the tip, (3) that there were few, if any, other people in the airport terminal that morning who fit the general description of the person described in the tip, (4) that appellant acted nervous after seeing Mijares' law enforcement identification, and (5) that appellant had a Connecticut driver's license. These specific and articulable facts could have reasonably suggested to Mijares that appellant was involved in criminal activity.

In addition, on this record the trial court could have reasonably concluded that the cocaine in question was the fruit of a warrantless search incident to arrest. According to the record evidence, at the moment Mijares began to search appellant's person, Mijares already knew all the facts mentioned previously as well as the fact that appellant was concealing a flat, rectangular bundle under his loose clothing, in the same manner that drug couriers sometimes use to transport illicit drugs. These facts amounted to probable cause to arrest, thus permitting Mijares to search appellant's person incident to arrest.

For the foregoing reasons, I would grant appellant's petition for discretionary review and affirm the judgment of the court of appeals. Because the majority fails to do so, I respectfully dissent.